Judge Ewing
delivered the Opinion of the Court — the Chief Justice did not sit in this case.
James Harlan sold, and executed his bond to convey, a tract of one hundred and twenty eight acres of land, to Thomas Huff. Huff afterwards contracted to sell said land to Seamore, for six hundred dollars, payable in six equal annual instalments, and executed his bond for a title, and Seamore executed his six notes to him, for the consideration.
Huff assigned four of the notes to Hart, and the other two to Harlan.
Afterwards, an arrangement was made between Huff, Seamore and Hart, by which Huff assigned to Hart, his bond on Harlan, for a title, and Seamore delivered up to Huff, his bond for a title, and took Hart’s bond for a title, to be made to him, on or before the 25th day of December, 1813, and lifted the four notes given to Huff, and assigned to Hart, and executed four other notes, in lieu thereof, directly to Hart.
*411 After making various efforts to obtain a title, Seamore brought suit against Hart, on' his bond, and recovered a judgment at law, for seven hundred and seventy dollars, and costs, at the April term, 1824.
At the June term, 1817, Hart recovered judgment at law against Harlan’s executors (he having died,) on the bond assigned to him by Huff, for seven hundred and thirty dollars.
Hart assigned the four notes which he held on Sea-more, to Harlan’s executors, and judgments were recovered on them and the two other notes assigned by Huff to Harlan, against Seamore, in 1823.
A short time after Seamore recovered judgment against Hart, he ¿bandoned the possession of the land.
Hart filed his bill against Seamore, and Harlan’s heirs, and representatives, injoining the judgment recovered by Seamore, against him, and praying that he might be compelled to accept a title from Harlan’s heirs — which they were willing and able to convey, in lieu of his-judgment; and in case this could not be done, that he might be made to account for rents and profits, to be credited on his judgment.
Seamore answered, resisting a specific execution, and. insisting on his judgments; also, setting up a claim for improvements, and resisting the claim for rents; and alleging, that he had not — through the mistake of the jury — recovered the full amount that he was entitled-to, of interest on his title bond, and praying that the. same might be allowed him.
Afterwards, Seamore filed his bill against Harlan’s-heirs and Hart, enjoining the judgments recovered against him, on the notes, and praying a cancelment of the contract, and a perpetuation of the injunction against the judgments against him, and a substitution of Harlan in his place, as' to his judgment against Hart, and. general relief.
This bill was answered by Harlan’s heifs, first professing to have title, and afterwards, by amended answer, acknowledging their inability to make any, and insisting that Seamore might be held to his election of his legal remedy on his judgment at law against Hart»-
Where one covenants to.make a title to land, and fails tp comply, the covenantee may go into Chancery, for a rescission, or specific execu-. tion, or he may have his action at law for the breach; but when he has made his election of the tribunal, he must abide hy it. By a decree for a rescission, or for specific execution,.thecovenant is merged,pnd no. suit at law can. be maintained on it; and by a judgment at law,, the covenantee is precluded in Equity. But when he has obtained a judgment at law, the Chancellor may act up on that, and do equity,, by way ot set.oíF, #c.— post, 416.
*412 The two suits were consolidated,, by the order of the Court, and coming on to be. heard together,, a decree was rendered by the Circuit Court, dissolving Seamore’s injunction against Harlan’s judgments, and dismissing his bill, with damages and costs; and after deducting two hundred and sixty dollars from Seamore’s judgment* for rents allowed, against him, after deducting pay for his improvements — dissolved Hart’s injunction for thd balance of the judgment, with damages; and decreed Seamore to. pay costs to Hart.
If this decree be permitted to stand, glaring injustice will be done to Seamore. Though he has paid one hundred dollars of the consideration, judgments amounting — principal and interest up to this time, -to about seventeen hundred dollars, remain against him; andas an equivalent therefor, h.e has a judgment against Hart, for five hundred and ten dollars, and has had the use of the place for fourteen years, the rents of which were fixed at two hundred and, sixty dollars.
The case has been involved in. much difficulty, by the election which Seamore has made, of his. legal, instead ofhis equitable remedy, upon his title bond.. Had not judgment at law been recovered in his favor, against Hart, his remedy would have been easy, and ample justice could have been afforded him by the Chancellor. But by his recovery of damages, at law.,, for a breach of the covenant to convey, he has so far affirmed the contract, and. sought his. remedy upon; it, as to present the question, whether he shall now be permitted to abandon the judgment which.he-has,recovered,, or waive the election which he has made, and ask a- Court of Equity for a rescission, of the contract, and a surrender of the note for the consideration.
We think he cannot. We recognize- no. principle of equity, which will authorize a Chancellor to.control the election which a purchaser has made of his remedies, after judgment or decree.. By his election must he abide..
Had he resorted to- his- remedy in. Chancery, and asked a specific execution, or rescission, of the contract, and obtained a decree for the one or the other, his bond *413 would have been merged in the decree, and he could’ not afterwards have maintained an action of covenant at law thereon.
As a general rule,, the vendee, who enters upon land under an executory contract of purchase, which is afterwards rescinded, is accountable to the vendor for the rents and profits,, during the term, of his occupancy; but there are-exceptions to thi» rule: and—
So also, if he has sued at law, and recovered judgment thereon, he cannot,, as we conceive, afterwards ask for a specific execution or rescission of the contract. He is estopped by the election which he has made, from asking other remedies upon his contract for a title, which is merged in the judgment which he has obtained. 4 Mm-ford, S32*
His election of his legal remedy, and recovery of a judgment in damages, for a breach of his title bond, leaves the vendor, or his assignee, at liberty to resort to his legal remedy, to enforce the collection of the notes for the consideration, if it has not been paid. But though the Chancellor cannot go behind the judgments, and take jurisdiction for the purpose of a rescission, he can act upon those judgments, as auxiliary to a court of law, and carry out and inforce any equity which may grow out of their connection,, as set-off or the like.
But before investigating this matter, it will be necessary to dispose of certain claims which are set up against Seamore’s judgment against Hart..
Hart, in his bill,, asks the Chancellor to decree him rents, and Seamore sets up, as a rebutting equity, a claim for improvements, and also a claim for an additional allowance for interest not allowed him in the judgment at law.
We are. aware that, as a general rule, the vendee, who has been let into possession upon an executory contract of purchase, is liable to the vendor, for rents and profits during his occupancy, upon the recission of the contract. But there are exceptions to this rule, recognized by our predecessors. In some cases, wheré the vendee has not been the cause of the rescission, has reposed confidence in the vendor, and received and enjoyed the rents and profits, under the confident expectation that they were his own — the product of his own farm, a sure and indefeasible title to which he was allured with the hope of receiving, and was deceived by the vendor, who had no title,and could make him none: in such cases, under *414 peculiar circumstances, this Court has refused any allo wance for rents that accrued prior tobhe judgment at law.
In this case— where the vendee was duped by the assurances of the vendor, and.injhopes that the title would be made according to contract, continued in possession 14 years; but finally despaired, bro’t suit on his title bond, recovered judgment, and abandoned the possession — it is held, that he shallnotbemade to account for any rents orprofits that accrued anterior to the date of his judgment.
In the case of Ewing’s Heirs vs. Handley’s Ex’ors., 4 Lit. Rep. 372, our predecessors say, “We, therefore, still ap- “ prove the direction of the former opinion, which di- “ rects the rents to commence at the time when Hand- “ ley recovered his judgment at law on the contract, at “ which time, he abandoned further hopes of title by the “ recovery of damages.”
The same exception to the general rule, is recognized in other cases, and especially in the case of Washington vs. Mc Gee, decided by this Court, at the last term.*
In no case, perhaps, did the vendee repose more confidence, in the vendor, than in the one under consideration; and in no case, has any vendee been more tantalized with the delusive hope that his title would be completed, and he would be secured in the uninterrupted enjoyment of his purchase. But.it turns out, after fourteen years effort to obtain it, and the cultivation of the land, during that period, under the assurance that he was using it as his own — that the vendor, Hart, or Harlan,has no title, aiid are wholly unable to make one to-him. Under these circumstances, he sues Hart, upon his title bond, and recovers judgment, and abandons the possession. He has been enjoined by Hart, and kept out of his money from 1824 till the present time, under the pretence of ability and willingness on the part of Harlan, to make a title, which turns out in the end, by the confession of Harlans, in their amended answer, tO’ be a mere delusion. We can, therefore, have but little difficulty in refusing to Hart, or Harlans, any allowance for rents and profits accruing before the abandonment of the contract for a title, by the recovery of a judgment at law for a breach of the covenant to convey.
But if there were doubts, whether this case should be brought within the rule adopted in the case of Ewing's Heirs and Handley’s Ex’ors., we would be strengthened in the conclusions to which we have come, by the following cónsiderations.
The sum recoverable, in damages, for a breach of covenant to convey land, is the amount of the'consideration terest; and, if it ^the plaintiff gets a he should move! inthesameterm, a^e; if he omits t0 doso.> without necessity,hehas no remedy in Chancery, upon his own bill.— But, should his ady and profits, _ ha 0fVt^d take in the vertquityT*'
There is no question that, as a general rule, Seamore Was entitled to recover on his title bond, the value of the land at the time the title should have been made, to be estimated by the consideration paid or to be paid, and interest thereon up to the rendition of the judgment.
And it is equally clear, that he fell far short of recovering at law, the full amount that he was entitled to recover, adopting the above rule as the correct one. r ° i -r\ i His title bond was due the 25th December, 1813, and his judgment thereon was rendered at the April term, 1824. Six hundred dollars being the consideration, that sum, with interest thereon till April, 1824, would amount, in the aggregate, to one thousand and five dollars, more by two hundred and thirty five dollars, than was recovered.
Seamore having submitted to the judgment, and taken no steps to correct it at law, during the term, and having , 1 , i i i i, shown no reason why he did not do so — such as would entitle him to the aid of a Court of Equity after the . , r 'term, we are satisfied, that he could not successfully set up this claim for additional' interest, as an original de•mand, presented by him as complainant.
But, he does not occupy the condition of complainant asking such relief. Hart is asking the Chancellor, as 'complainant, to allow him pay for rents and profits, as a set-off against so much of Seamore’s judgment against him. His claim is purely equitable, and should not be allowed, but upon the condition, that he do equity. The 'additional allowance for interest, which, in equity and 'good conscience, should be paid to Seamore, may, as we •conceive, be used by him as a rebutting equity against so much of the complainant’s claim for rents, as the additional interest, not allowed by the jury, will cover.
Hart has no just claim for rents, upon any other condition than that he has paid back to the purchaser, the full amount of the consideration and interest thereon. By such payment, he is restored to his former condition, as nearly as may be, and having enjoyed the profits of the land, may, in equity, generally, be made accountable for the same to the vendor. But if the vendee has not *416 obtained this restitution, he ought not to be made ad* countable for rents.
Where a land contractis rescinded, and vendee gets pay for improvements, and is held accountable for the rents inpart. i.e. from some epoch subsequent to his entry , the improvements should be valued — not at cost, but — asthey stood at that epoch.
Notes given for land,or thejudgments on them —in the hands of the payee, or an assignee, and a judgment on the title bond, as they are connected — the one being the consideration of the other, are proper subjects of set-off in equity.— And the date of the latter judgment should be assumed as the period of set-off, .because, that car-^he^otes’ andjudgmentson 1 lem’ do'
*416 Besides, the interest upon the consideration, and the rents and profits upon the land sold, has been adjudged by this Court, as equivalents. If the one has been enjoyed by one party, it has been deemed, generally, aá an equitable equivalent to the enjoyment of the other by the other party*
If the interest has not, therefore, been paid to the purchaser, nor a judgment for the same, as in this case, in part, neither should the rents be allowed to the vendor.
We are constrained, therefore, to conclude, that the amount of interest, which Seamore failed to recover, forms an equitable rebutter to the complainant’s right to recover its equivalent in rents, and adds a strong argument to the first ground assumed, for disallowing the complainant’s claim for rents.
As Seamore is not to be chargeable with rents, priof to the recovery of his judgment at law, he ought not to be allowed pay for his improvements at their original cost or value when new. But in persuance of the principles settled in the case of Ewing’s Heirs vs. Handley’s Ex’ors., and Washington vs. Mc Gee, the improvements must be valued at the time when the judgment at law was rendered, and be assessed at their value at that time, taking into consideration their then deterioration.
We have said, that, though the Chancellor cannot go behind the judgments, and take jurisdiction for the purpose of a rescission, he can act upon those judgments, as auxiliary to a court of law, and carry out and enforce any equity which may grow out of their connection.
In relation to the four notes assigned by Hart to Harlan’s executor, we have no doubt but the judgments thereon, may be offset by so much of Seamore’s judgment against Hart, as will extinguish the same.
Those notes are a part of the consideration of the land purchased by Seamore, for a failure to convey which, his judgment was recovered. The claims being connected, and the one forming the consideration of the other, according to the well settled doctrine of this Court, the one may be set off, in equity by the other. *417 7 Monroe, 455, Tribble vs. Taul; 3 J. J. Marshall, 86, Talbott vs. Warfield.
„ , ,, bolds -a title bond;besellsthe }“nd,t0 -®-> §ives bond for a title, takes B’s "base^none6 ^nd assigns it to c. a iby ment) A assigns the title bond he binds himseiffo make the title to bond ¡riven by ^jjed^xhe^c recovers judgme”í asa‘nst A, S recovers judg^r^filure ^ convey. There o^these'judí-’tf'
Nor does the fact that the notes have been assigned away by Hart to Harlan’s executor, present any obstacle to the set-off. They are subject to the same equity in the hands of the assignee, that they were subject to in the hands of the assignor. 1 Stat. Law, 151. The equity of set-off in this case, grows out of the connection between the demands — the one being the consideration of the otherrand are co-existent with the origin of the demands, and consequently, existed before the assignment of the notes. They, consequently, passed into the hands of the assignee charged with this equity. 3 Mar. 231, Chiles vs. Corn; 1 Mon. 233, Schooling vs. Mc Gee; 2 J. J. Marshall, 366. And as the equitable right to the set-off attached at the recovery of judgment at law, it is our opinion, that it be allowed as of that date, as a means of stopping the accruing interest on the judgments from that time. But that, prior to allowing said set-off, the improvements, if any, be assessed as before directed, and first set-off against so much of said judgments, as they will extinguish — first deducting therefrom any allowance which ° , , - , -r maybe made lor waste, it any.
In relation to the two notes assigned by Huff to Harlan, ... , . , , weareimpelledtocometotheconclusion,thattheycannot be set-off by the judgment against Hart. Though executed originally as a part of the consideration of Huff’s sale of the land to Seamore, that contrct was afterwards cancelled, and Huff’s bond for a title surrendered up to him, and be acquitted and discharged from all responsibility for the title. And upon his assigning Harlan’s bond for a title to Hart, Seamore received Hart’s bond in lieu of Huff’s. He has, therefore, no further claim upon Huff, legal or equitable, but must look to Hart for indemnity upon his bond. He could not, therefore, set-off those two notes, by his judgment, in the hands of Huff’, or his assignee.
As Harlan’s executor has not,m this case, presen tediumselfinan attitude to obtain a decree over, for indemnity against Hart,for the notes assigned by Hart to his testator, we have not thought proper to determine the nature or ex•tent of his relief.
*418 It is therefore decreed by the Court, that the decree of the Circuit Court be reversed, the cause remanded, and commissioners appointed to assess the rents, if any,. that accrued after the judgment at law, in favor of Sea-more, and also., to assess the improvements, and waste, if any; and that a decree be rendered not inconsistent with the principles above- settled;, and the appellant .have his costs in this Court.

The case of Washington vs. McGee, was suspended, by a petition for a re-hearing, until this term, and will be found this volume, by a reference to the table of cases.